Case number 19-7068. Philip Andrew Haughton, appellant v. District of Columbia. Mr. Brown, for the appellant. Mr. Love, for the appellate. Mr. Brown? Yes. I'm sorry. I didn't hear your time, but may it please the court, my name is Gary Brown. I represent the appellant Philip Haughton in this civil action. Good morning, Mr. Brown. Good morning, your honor. In 2008, Congress amended the ADA, including the wording of the causation standards, how much discrimination is enough to violate the law. Before the amendment, ADA, the ADA Americans with Disabilities Act, used because of, which was consistent with Title 7 of the 64 Civil Rights Act and the AIDS Discrimination and Employment Act. However, in 2008, Congress changed that language from because of to on the basis of. Those are the new words for the causation standards for the ADA. This case requires the court to define the proper standard of causation. These words mean what was Congress intending with the change. In Burlington, northern Santa Fe, a Title 7 case identifying the difference between discrimination and retaliation because of the difference in the wording, the court said, we normally presume that where words differ as they differ here. Congress acts intentionally and purposefully. In 2008, Congress intentionally and purposefully changed the causation standard in the ADA. And was sending a message. Currently, there were two classes, the motivating factor level or the but-for level. If Congress believed the ADA was a tort and wanted motivating factor to be the level of causation, then it could have used what Title 7 used in 1990, 42 U.S.C. 2000 E2M. So when Congress wanted the status claims of Title 7 to only need the lesser standard of the motivating factor, it wrote specific language to accomplish that result. If Congress wanted a but-for level of causation, there was no need to make an amendment. That's what because of had been interpreted. And both the ADA and Title 7 retaliation provisions, which use because of language, are both now interpreted as but-for causation levels. Are you arguing that the motivating factor analysis under the ADA goes further than the motivating factor provision in Title 7 in particular under M, the impermissible consideration? Because in your view, even under the ADA, you're entitled to a motivating factor instruction, which doesn't come with the same decision, partial defense? Is that your argument? You're distancing yourself from rather than relying on incorporation of Title 7? Your Honor, my real point is that I don't believe that the ADA is in its real nature a tort, but I do believe that motivating… You disavow the court. Are you talking about the time when I'd be able to get no back pay, but some… Under Title 7, where there's a status-based discrimination claim, a plaintiff that proves that that discrimination was a motivating factor, but not a but-for cause, the defense is entitled to an instruction that we would have made the decision anyway. And if the jury says, yes, it was a motivating factor, but yes, they would have made the decision anyway, the plaintiff is still entitled to declaratory relief or incident, but is not entitled to damages. And my question is, is that the rubric that you understand would apply in your theory under the ADA or not? Not, Your Honor. I'm not sure where looking at the ADA as not a tort would take the court, but I know it would take them away from the but-for jury instruction that I'm trying to get changed. I'm not sure how that balance might work out in various situations. But it requires the plaintiff, and I would ask for the court, it requires the plaintiff to admit that they would have been fired or they would have had that adverse action anyway. And in my case, my client absolutely refused to even consider that as a possibility. I'm not sure that I heard you correctly, but I thought you just said that that rubric, what I just described as the Title VII motivating factor package, which is plaintiff proves motivating factor, defense has an opportunity to say, hey, we would have made the same decision, even not considering that factor. As you just re-articulated, I thought you said that the plaintiff would have to admit that they would have made the same decision, which is not, that's not what that Title VII standard requires. I'm sorry, that's the way it was proposed to me in court, yes. But no, I understand what you're saying, Your Honor. Title VII applies. Title VII is a tort. Whether or not the company would, the employer would have the opportunity to prove that they would have fired or taken the adverse action anyway, I think has to be an open option for the employer. They've got to be able to justify or try to justify what they have done. So I have no belief that the motivating factor is going to interfere with an employer's ability to demonstrate that it would have happened anyway. I think the key for my point is that motivating factor is discrimination. Title VII says it's enough to violate the law. So if there is a motivating factor, there should be punishment. What the G, 5G talks about is a balance. Okay, punish the employer, charge them some attorney's fees, no back pay, and provide equitable relief if it's appropriate. But the back pay is out because the company would have done it anyway. So that's the balance I think that Title VII is trying to draw. And that's the kind of balance that I think the ADA would need to use. Thank you, Mr. Houghton. One more question. You asserted in your brief that the lower standard, the motivating factor standard would have caused the jury to find in Mr. Houghton's favor. What's the basis on which you say that, that the evidence can be understood as supporting either that everything that the employer said was a lie or something more like it was just a factor? As a factual matter, I'm not sure what you would have the jury believe happened that would map onto the motivating factor approach. There is a document, Exhibit 35, which was a meeting between the union, Mr. Houghton and the union rep and the principal with a neutral note taker, essentially a neutral note taker. In that document, the notes reveal several different areas of conflict. Lying is an interesting, widening impact, I think, especially in front of a jury, if a witness lies once, his credibility is really undermined. For example, the one that I thought was really powerful was the claim that my client had not prepared his wall in a good enough way. He had testimony from other people saying that. Exhibit 8, I believe, is a document just fairly recently before the new principal came from the old principal praising Mr. Houghton for the way that he kept his classroom and used different ways to help his disabled students. I have to say, Mr. Brown, I don't believe that this exhibit is in the appendix that you gave us. I read the entire appendix, and I don't remember this argument being referred to by the witnesses whose testimony you presented, and I don't remember reading this exhibit. Yes, well, your honor, I'm not sure that in my opening brief that I addressed this. I know that Mr. Love, that D.P. came back with that. Well, even if it was a different standard, he'd lose anyway, because there's enough evidence in there. That's a pretty broad way to look at what was going on. I hope exhibit 35 is in the appendix. It was definitely admitted. Let me just ask, we've taken a lot of your time, and we want to do some time for rebuttal, but is there any other factual material that you would point to to explain how a jury could have found that even not totally discrediting the principal as your primary argument, that they might nonetheless have found that disability bias was a motivating factor? Well, yes. I mean, there's the dispute about whether or not he raised his voice in a meeting. Both the principal said one thing, and the plaintiff said a different, but in that particular case, I think it was Georgia Johnson who accompanied him to regular meetings and swore that he was not the kind of person who would raise his voice and clearly never did when she was with him at all the meetings. That was about that. There was a question about his lesson plan. Again, the principal and Mr. Hardin disagreed directly, but he had Paula come into the class, help him with his lesson plans, and she talked about it. The principal said they were in the car. Mr. Hardin and Paula said that they worked on him in the classroom during that week. So, as to every item, Mr. Regis said that he was available to help and wanted to meet with Mr. Hardin several times in his emails with Mr. Hardin. Mr. Hardin showed up at the appointed time, and there was no help for him. So, every accusation proposed by Mr. Regis was rebutted through the testimony of people. The reason that I bring up thirty-five is it's a compilation and clear identification that they are in conflict and that the conflict was presented to the jury. Mr. Brown, unless Judge Pillard or Judge Sental have any further questions, I think we'll hear from Mr. Love. Okay, no questions. Thank you. Yes. Good morning, and may it please the court, Richard Love for the District of Columbia. Okay. And their argument is that Principal Regis was lying, that the reasons he gave for his termination were not true, and that the real reasons for including him in the RIF was to discriminate or retaliate against him based on his disability. So, the district court correctly found that even if the motivating factor was a viable theory under the ADA, the motivating factor instruction had no basis in the record here. Mr. Houghton wasn't entitled to that instruction that discrimination need only be a motivating factor when his case was based exclusively on a single factor. I also think that… Can I ask you, Mr. Love? Sure. That's a little bit confusing because wouldn't it be permissible, depending on the evidence, for a plaintiff to say, you know, I don't think that the reason that I was fired was because of my bad conduct at work. But even if you think that might have been part of the reason, there was definitely discrimination. Like, those things seem like they're not… Like, the plaintiff doesn't have to concede that there were legitimate factors in order to have a mixed motive instruction, assuming under the law that it's available. Right. Do they? They don't have to concede anything. No, I agree they don't have to concede anything. But again, we're moving into sort of, as you had said before, the Title VII rubric. This does involve a strategic choice by the plaintiff because, you know, there is, you know, the affirmative defense an employer can put on that would limit damages. So, you know, there's a strategic decision as to whether they want to present the case as a single factor case or as a mixed motive case. Right. It's sort of… Let me just clarify, and I want you to follow up and say that thought. So I'm going to say, okay, I'm not going to do that. I'm just going to go for the brass ring. So in that sense, it's a strategic decision, but there's no either or about it, right? You don't have to, you know… You can present both a mixed motive and single factor case. Yes, but that too is a strategic choice. And I think that the district court correctly found, based on having viewed all the evidence and listened to the testimony, that this case was presented as a single factor case. But even if she was wrong, I think as your questions were designed to test, Mr. Houghton didn't demonstrate that any error had interfered or violated his substantial rights. There's nothing in his brief that even addresses the effort, the issue other than a totally conclusory statement that he would have prevailed or had a better chance of prevailing if a motivating factor instruction had been given. In addition, as our brief pointed out, every circuit court to have considered the issue has interpreted Title I's prohibition on discriminating against a qualified employee on the basis of a disability to require evaluation under a but-for-causation standard, not a motivating factor standard. And while Mr. Houghton has argued that the change from because of to on the basis of has some importance here, the Supreme Court has repeatedly indicated that the phrase on the basis of indicates a but-for-causal relationship. Indeed, most recently, a week ago in this case called BAD v. Wilkie, and a week earlier that in the case Comcast v. National Association of African American-Owned Media. In both cases, the court indicates that on the basis of indicates but-for-causation, and the court said the same thing in the Gross case, which we cite in our brief, as well as in the Nassar case. In addition, those cases, Gross, Nassar, it also was discussed in the Comcast case, found that it was instructive that the language inserting the motivating factor standard into the status-based offenses in Title VII was done at the same time that the ADA was amended, but that language, that test was not included in the ADA. I've seen references to that, but wasn't it actually a year earlier that the ADA was amended? I thought it was 1990, ADA amendments, 1991, Civil Rights Act. Civil Rights was 1991. Yeah, so 1990 is the ADA, and 1991 is the Civil Rights Act that amends the Title VII provision to partially codify Pricewaterhouse. I think the argument that's been made by some of the dissenters in some of the other circuit cases is that at the time that the Disability Act was amended, that because of language was actually sought in light of Pricewaterhouse to invite the motivating factors approach. So they wouldn't have needed to address that. Am I wrong about the chronology? Well, I'm not sure that you're wrong about the chronology, but I do believe that both several of the cases, and I believe Gross and Nassar, indicated that it was instructive that they were, you know, said the ADA's text does not include the motivating factor language, and Congress didn't add it, even though when it amended Title VII, it contemporaneously amended the ADA in several ways. So that's how the court described it, I believe. I think the point you made, if that were the case, I think then the change, from because of to on the basis of, I think, you know, does not signal that the motivating factor that it intended to employ a motivating factor test in the ADA. And what does it signal? Well, you know, the courts that have looked at it, including the Fourth Circuit in Gentry, the Second Circuit in Notofsky, or the Sixth Circuit in Lewis, have described the change to address that there was, you know, undue focus had been placed on the preliminary question of whether a particular person is a person with a disability. And it wasn't designed to lower the causation standard, but to emphasize that the standard for determining whether an impairment constitutes a disability. So it's like because of that you actually have to be disabled, whereas on the basis of you could be treated as thought to be disabled. Right. I think it was to lower the emphasis on the preliminary question of whether a person, whether an impairment constituted a disability in the ADA rather than lowering the causation standard. Right. Now, I guess that you're making a point that it's not going to the causation standard, but I'm just trying to get an accurate sense of what it was doing. And I thought that it had to do with if someone's perceived to be disabled, even if they're not, that would be disability discrimination that would be violated? No, I think that's part of it. But I think part of the amendment, if I understand it, was to broaden the scope of coverage. And that there was a reaction to several cases that had made the bar to qualify as a person with a disability, as defined under the ADA, more rigorous to basically lower that standard to construe the definition more liberally and thus to provide broader coverage. As to whether or not the impairment itself constitutes a disability under the law, but not to lower the causation standard, whether or not that person who does have a disability was discriminated on the basis of that disability. Mr. Love, thank you. Mr. Brown, you were out of time, but you can have one more minute if you would like. Thank you. I would like to make a few points. First of all, it's a funny place to change a different thing by changing causation standard language. The idea that the government used to do, there's three groups of disabled people. There's the ones that can't do the job at all. There's the ones that can do the job without any help at all. It's the middle category that the ADA was intended to help. The government, I mean, Congress shifted assistance for those people from the government to the employer, which makes a lot of sense in a lot of reasons. For a lot of reasons, the employer knows its workplace better than the employer can tell whether reasonable accommodation is appropriate for its workplace. But the important part is that without doing any harm to anybody, an employer is responsible for changes, making changes. This is different. Affirmative action required a finding of liability. The definition of court that Justice Kennedy repeats again and again, or goes through fairly thoroughly in that, it talks about addressing a harm caused by an employer. There is no harm caused by an employer here. It's got an obligation that used to be part of the government and still is, but rather than give billions of dollars to the federal government to increase their training position, they've shifted it to the employer to make the on-the-job definition. Employees have had to hire doctors. They've had to hire – they've had to restructure their whole workplace at times. Mr. Brown, Mr. Brown, finish up, please. You're well over. I'm sorry. I did not realize that. I'm sorry. It was blocked at the time. So that's my point. Okay. Thank you. We have your – Dave, did you have a question? No. Pardon me? Did you have a question? No question. Okay. Mr. Brown and Mr. Love, thank you for your presentations this morning. The case is submitted. Thank you.
judges: Tatel, Pillard, and Sentelle